UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARCUS ISREAL,
    Petitioner,

vs.

WARDEN, WARREN
CORRECTIONAL INSTITUTION,
    Respondent.

Case No. 1:14-cv-24

Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Petitioner, an inmate in state custody at the Warren Correctional Institution in Lebanon, Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). This matter is before the Court on respondent's motion to dismiss the petition. (Doc. 6). Although petitioner was granted an extension of time in which to file a response to the motion to dismiss, he did not do so by the deadline date. (*See* Doc. 8). Therefore, the matter is ripe for disposition.

## I. PROCEDURAL HISTORY

### State Trial Proceedings

On May 13, 2011, the Warren County, Ohio, grand jury returned an indictment charging petitioner with the following criminal offenses: one count of murder in violation of Ohio Rev. Code § 2903.02(B) with firearm specification (Count One); one count of involuntary manslaughter in violation of Ohio Rev. Code § 2903.04(A) with firearm specification (Count Two); one count of aggravated vehicular homicide in violation of Ohio Rev. Code § 2903.06(A)(2)(a) with firearm specification (Count Three); two counts of felonious assault of a peace officer in violation of Ohio Rev. Code § 2903.11(A)(2) with firearm specification (Counts

Four and Five); one count of receiving stolen property in violation of Ohio Rev. Code § 2913.51(A) with firearm specification (Count Six); one count of failure to comply with an order or signal of a police officer in violation of Ohio Rev. Code § 2921.331(B) with firearm specification (Count Seven); and two counts of having weapons while under disability (Counts Eight and Nine). (Doc. 6, Ex. 1, at PAGEID#: 49-55). The Ohio Court of Appeals, Twelfth Appellate District, has provided the following summary of the facts that led to the indictment based on evidence presented at petitioner's trial:[1]

> On May 9, 2011, at approximately 11:40 p.m., William Peters arrived at the Take a Break Lounge in Middletown, Ohio in a Cadillac (a black, four-door sedan) that he had borrowed from William Edwards. Shortly after midnight, Isreal was dropped off at the same lounge. Isreal exited the bar at 12:50 a.m. and stole the black Cadillac. Isreal returned to where he had been staying and armed himself with a .357 magnum revolver he had recently purchased. On his way to Dayton, Isreal drove the Cadillac through Franklin.
>
> At approximately 1:49 a.m., Officer Jacob Lacon of the Franklin Police Department was on a routine patrol when he observed the black Cadillac traveling on the public roadway without working taillights. Officer Lacon pulled behind the Cadillac and activated his overhead lights in order to initiate a traffic stop, but the driver, later identified as Isreal, rapidly accelerated westbound on State Route 73 in Franklin. Isreal continued to accelerate and turned into a side street in order to avoid Officer Lacon's pursuit. Officer Lacon, who had activated his sirens and informed dispatch of Isreal's failure to stop, pursued Isreal through Franklin. The side street that Isreal turned down was a residential area with cars parked on both sides and had a speed limit of 25 m.p.h., which Isreal grossly exceeded.
>
> Isreal continued his flight, and in the process, began to drive through stop signs

---

[1] The state appellate court summarized the facts in its direct appeal decision filed October 22, 2012. (*See* Doc. 6, Ex. 23). 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless the petitioner rebuts the presumption by "clear and convincing evidence." In the absence of clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, those findings are presumed to be correct. *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).

2

and red lights. Officer Christopher Keene of the Franklin Police Department soon joined the chase and eventually became the lead car in the pursuit as the cars began traveling eastbound on SR 73. Officer Keene continued to follow Isreal, who was driving between 80 and 100 miles per hour over roads that had a 35 m.p.h. speed limit.

During the pursuit, Isreal began going the wrong way down SR 73 and passed several civilians who were traveling westbound on SR 73. On[]e such civilian, Karen Richardson, was in her car and waiting to turn left when she saw Isreal approaching her head-on. Isreal swerved seconds before colliding with Richardson, and continued down the road. Isreal continued to drive at high rates of speed even through road construction which included narrow roads bounded by concrete barriers and cones. Isreal drove through more red lights, and continued to travel at speeds greater than 80 m.p.h.

Officer Chris Evens of the Springboro Police Department joined the pursuit, and blocked the entrance to Interstate 75 with his police cruiser so that Isreal could not merge onto I-75. Although Evens tried to employ stop sticks to disable Isreal's t[ir]es, he was unable to do so because Isreal approached Even's location at such a high rate of speed.

Once through the construction zone, Isreal continued to flee eastbound along SR 73 at speeds in excess of 100 m.p.h. throughout a commercial district that contained multiple intersections and driveways. At that point, Sergeant Daniel Bentley of the Springboro Police Department tried to employ stop sticks, but Isreal was driving so fast that he was able to pass Sergeant Bentley's location before the stop sticks were deployed. Isreal passed Sergeant Bentley at 100 m.p.h., within three to five feet from where Sergeant Bentley stood.

Isreal continued his flight and passed into Clearcreek Township, which is comprised of residential streets and rural areas. Because the roads began to dip and curve, Isreal dropped his speed from 105 m.p.h. to between 80-95 m.p.h. Officer Daniel Morgan of the Clearcreek Township Police Department joined the pursuit, but was also unable to deploy stop sticks. Morgan observed Isreal make several erratic lane changes while driving at speeds over 100 m.p.h. He could see the Cadillac rock from side to side, and that Isreal's driving maneuvers were "extremely hazardous."

Isreal then entered Waynesville, reaching speeds in excess of 120 m.p.h. while driving on SR 73, which turns into a two-lane road. Isreal approached the intersection of SR 73 and U.S. 42 at about 120 m.p.h. and attempted to turn right onto southbound U.S. 42. However, due to the excessive speed, Isreal was unable to connect to southbound U.S. 42 and instead drove the wrong way on northbound

3

lanes of U.S. 42.

Once Isreal entered U.S. 42, Deputy Troy Black of the Warren County Sheriff's Office joined the pursuit, traveling north in the northbound lanes of U.S. 42. As Deputy Black continued to drive north in the northbound "fast" lane, Isreal drove directly toward Deputy Black at approximately 115 m.p.h. Deputy Black was forced to turn right into Waynesville Road in order to avoid a head-on collision with Isreal. Similarly, Deputy Nicholas Behymer joined the pursuit and was also forced to serve off the road in order to avoid a collision with Isreal. When Deputy Behymer swerved to avoid the collision, he hit a ditch, careened up a hill, and struck a tree.

After forcing the two deputies off the road, Isreal continued to flee southward in the northbound lane of U.S. 42. At that point, Isreal was traveling between 115 and 120 m.p.h. During this portion of the chase, Isreal forced three civilian travelers off of the road, and never slowed down or tried to avoid a collision with them.

As Isreal continued his flight, Sergeant Brian Dulle of the Warren County Sheriff's Office positioned his cruiser, a Ford Expedition, at the northwest corner of U.S. 42 and Utica Road, and exited his cruiser in order to deploy stop sticks. Before the intersection of U.S. 42 and Utica Road, there is a bend in the road and a small hill crest. When Isreal reached the bend and crest, he was traveling between 120-126 m.p.h. and the Cadillac went airborne, hit a culvert, turned end-over-end, crashed into Sergeant Dulle's cruiser, and came to rest on the west side of U.S. 42. Sergeant Dulle was struck and killed during the wreck.

Within seconds, Officers Keene and Morgan arrived at the intersection and approached the wrecked Cadillac. Officer Keene broke out the back window of the Cadillac in order to locate and retrieve the driver, but found the Cadillac empty because Isreal had been ejected through the sunroof when the Cadillac rolled. Officer Keene and the other officers began to search for Isreal, but did not find him.

The officers found the deceased Sergeant Dulle on the side of the road. Sergeant Dulle had sustained severe injuries, any of which could have been fatal. The injuries included abrasions, contusions, massive internal injuries, brain damage, a fractured pelvis, severely fractured ribs, fractured and separated clavicles, a severed spine, fractured leg, as well as fractures in his vertical vertebrae where the spine joins the skull. Sergeant Dulle's heart, lungs, esophagus, stomach, and diaphragm were torn loose from one another and from the internal structures that held them in place. The coroner ruled that Sergeant Dulle's death was caused by multiple blunt force injuries, and classified Sergeant Dulle's death as a homicide.

> At the scene of the crash, officers began to set up a perimeter in order to search for and contain Isreal. Police helicopters searched for Isreal from the sky and canine units were deployed on the ground to track his whereabouts. However, officers were not able to locate Isreal until several hours later when Deputy Black, who was returning to help with the investigation after having informed Sergeant Dulle's wife of his death, located Isreal on Drake Road, a short distance from the crash site.
>
> Isreal was taken to the police station, and questioned after he agreed to waive his *Miranda* rights. During the interview, Isreal denied having driven the Cadillac and causing Sergeant Dulle's death. Instead, Isreal claimed that someone named JJ was driving the vehicle during the chase, and that he had only been a passenger afraid for his life due to JJ's dangerous driving. However, Isreal's story changed, and he admitted to having been the driver.

(*Id.*, Ex. 23, pp. 2-5, at PAGEID#: 228-31) (footnote omitted).

The matter proceeded to trial before a jury, which found petitioner guilty on all counts except for one of the felonious assault charges (Count Five). (*See id.*, Ex. 17, at PAGEID#: 106). Following a sentencing hearing, the trial court issued a final judgment entry on October 25, 2011. (*Id.*, Ex. 18, at PAGEID#: 108-09). In that entry, the court merged Counts 2, 3 and 4 with Count 1, as well as Count 9 with Count 8, and sentenced petitioner to the following consecutive terms of imprisonment for an aggregate prison term of twenty-five and one-half (25 1/2) years to life, "of which 21 years is a mandatory term": fifteen (15) years to life for the murder offense charged in Count 1, as well as one (1) year on the firearm specification attached to Count 1; eighteen (18) months for the receipt of stolen property offense charged in Count 6, as well as one (1) year on the firearm specification attached to Count 6; thirty-six (36) months on the charge in Count 7 of failure to comply with the order or signal of a police officer, as well as one (1) year on the firearm specification attached to Count 7; and thirty-six (36) months for the weapons offense charged in Count 8. (*Id.*).

5

### Direct Appeal: Ohio Court of Appeals

Petitioner's trial counsel filed a timely notice of appeal on petitioner's behalf to the Ohio Court of Appeals, Twelfth Appellate District. (Doc. 6, Ex. 19, at PAGEID#: 111). With the assistance of new counsel for appeal purposes, petitioner filed an appellate brief in which he asserted the following assignments of error:

1. The trial court committed plain error in giving its instructions to the jury.

2. The trial court committed plain error in allowing testimony about the victim's character and family.

3. The trial court erred by allowing prejudicial photos and videos of the victim into evidence.

4. The trial court erred in sentencing Appellant to multiple sentences for the handgun specifications.

5. The trial court erred in not acquit[t]ing Appellant of felonious assault.

6. The statute that makes possession of a firearm during the commission of a crime, when that firearm was not used in crime, a specification subject to incarceration, is unconstitutional.

7. The judgment of conviction should be overturned due to Appellant receiving ineffective assistance of counsel.

(*Id.*, Ex. 20, at PAGEID#: 118-22).

On October 22, 2012, the Ohio Court of Appeals issued an Opinion and Judgment Entry overruling the assignments of error and affirming the trial court's judgment. (*Id.*, Ex. 23, at PAGEID#: 227-54).

### Motion For Delayed Appeal: Ohio Supreme Court

Petitioner did not perfect a timely appeal to the Ohio Supreme Court from the Ohio Court of Appeals' October 22, 2012 direct appeal decision. Nearly a year later, on October 15, 2013,

petitioner filed a *pro se* notice of appeal and motion for leave to file a delayed appeal to the state's highest court. (*See* Doc. 6, Exs. 24-25, at PAGEID#: 255-56). In his motion, petitioner argued as "cause" for his delay in filing that he first learned of the Ohio Court of Appeals' decision on December 10, 2012, four days past the filing deadline for a timely appeal to the Ohio Supreme Court, and that he thought his appeal was denied when the appeal documents he immediately prepared and sent out to the court on that date were returned to him by the deputy clerk of the court. (*Id.*, Ex. 25, at PAGEID#: 258). Petitioner further stated that he had only "recently" been "informed by another law library clerk that he was required to file a motion for delayed appeal because his appeal was not accepted because it arrived late." (*Id.*). Petitioner contended that he "should not be punished for his lack of knowledge." (*Id.*).

On December 4, 2013, the Ohio Supreme Court denied petitioner's motion for a delayed appeal and dismissed the matter without opinion. (*Id.*, Ex. 26, at PAGEID#: 290).

### Federal Habeas Corpus Petition

The instant federal habeas action commenced on January 8, 2014. (*See* Doc. 1). However, for statute of limitations purposes, it is presumed that petitioner's habeas petition was filed on December 23, 2013, the date that petitioner claims he placed the pleading in the prison mailing system for submission to this Court. (*See* Doc. 1, p. 17, at PAGEID#: 17).[2] In the petition, petitioner alleges six grounds for relief:

**GROUND ONE:** Insufficient Evidence.

---

[2] It is well-settled that the filing date of a federal habeas corpus petition submitted by a *pro se* prisoner is the date on which the prisoner provides his papers to prison authorities for mailing. *See Houston v. Lack,* 487 U.S. 266 (1988); *see also Miller v. Collins,* 305 F.3d 491, 497-98 (6th Cir. 2002); *Goins v. Saunders,* 206 F. App'x 497, 499 n.1 (6th Cir. 2006).

7

**Supporting Facts:** Evidence was insufficient as a matter of law to sustain the conviction.

**GROUND TWO:** Ineffective Assistance Of Trial Counsel.

**Supporting Facts:** Trial counsel was ineffective at trial for the reasons listed in Isreal's assignment of error raised in direct appeal and for failing to specifically request the right jury instructions.

**GROUND THREE:** Violation of the defendant's due process rights as guaranteed by the 5th and 14th amendments of the constitution due to faulty jury instructions.

**Supporting Facts:** Trial court erred in failing to instruct the jury that reckless driving was insufficient to find him guilty of felonious assault and therefore guilty of felony murder.

**GROUND FOUR:** Violation of due process rights to the introduction of prejudicial photos and videos of the victim into evidence.

**Supporting Facts:** Trial court erred in admitting photographs of Sergeant Dulle at the scene of the wreck and autopsy photos, as well as videos taken from police cruisers during the chase.

**GROUND FIVE:** Isreal's due process rights as guaranteed by the 5th and 14th Amendments and double jeopardy rights were violated.

**Supporting Facts:** The trial court sentenced Isreal to multiple sentences for the same handgun as he was sentenced to multiple handgun specfications.

**GROUND SIX:** Isreal's right to posses[s] firearms as guaranteed by the Second Amendment of the United States Constitution was violated.

**Supporting Facts:** The statute that makes possession of a firearm during the commission of a crime, when that firearm was not used in a crime, a specification subject to incarceration, is unconstitutional. Hence R.C. 2941.141, and the firearm specifications therein, is unconstitutional because the United States Constitution guarantees the right to bear arms, and hence this sentencing statute is in violation of the right to possess firearms guaranteed by the Second Amendment to the United States Constitution.

(*Id.*, pp. 5, 7, 8, 10, 12, 13, at PAGEID#: 5, 7, 8, 10, 12, 13).

In the motion to dismiss filed in response to the petition, respondent contends that the petition should be dismissed with prejudice on the ground that it is timed-barred under the applicable one-year statute of limitations set forth in 28 U.S.C. § 2244(d). (Doc. 6, pp. 9-12, at PAGEID#: 36-39). Respondent also alternatively argues that petitioner procedurally defaulted and has waived his claims for relief by failing to pursue a timely appeal to the Ohio Supreme Court. (*Id.*, pp. 12-15, at PAGEID#: 39-42). Although petitioner was granted an extension of time through July 29, 2014 in which to file a response to the motion to dismiss (*see* Docs. 7, 8), petitioner never did so.

## II. RESPONDENT'S MOTION TO DISMISS (DOC. 6) SHOULD BE GRANTED BECAUSE PETITIONER PROCEDURALLY DEFAULTED AND HAS WAIVED HIS CLAIMS FOR RELIEF

Respondent has moved for dismissal of the petition on both statute-of-limitations and waiver grounds. (*See* Doc. 6). According to respondent, petitioner's habeas petition is time-barred because the statute of limitations governing petitioner's claims "expired on January 24, 2014" and petitioner "filed the instant petition for habeas relief on February 28, 2014, thirty-five (35) days later." (*Id.*, p. 12, at PAGEID#: 39). However, contrary to respondent's contention and as discussed above, *see supra* p. 7 & n.2, the presumed filing date of the petition for statute-of-limitations purposes is December 23, 2013, the date petitioner claims he placed his application for federal habeas relief in the prison mailing system for submission to this Court. (*See* Doc. 1, p. 17, at PAGEID#: 17). The petition was docketed as "filed" on January 4, 2014, which is also well within the limitations period as calculated by respondent. Therefore, the undersigned will assume in petitioner's favor that his petition was timely filed. However, although the petition should not be dismissed on statute-of-limitations grounds, the undersigned is persuaded by respondent's

9

alternative argument that the petition is subject to dismissal with prejudice because petitioner procedurally defaulted and has waived his claims for relief.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). In order to satisfy the fair presentation requirement, the claims asserted in the federal habeas petition must be based on the same facts and same legal theories that were presented to the state courts. *Carter v. Mitchell*, 693 F.3d 555, 568 (6th Cir. 2012) (citing *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Wong v. Money,* 142 F.3d 313, 322 (6th Cir. 1998)). Moreover, a claim is deemed fairly presented only if the petitioner presented his constitutional claims for relief to the state's highest court for consideration. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985). If the petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate review to the state's highest court, or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled under the procedural default doctrine that the federal habeas court may be

barred from considering an issue of federal law from a judgment of a state court if the judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *See Harris,* 489 U.S. at 260-62. The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal. *Id.*

The Sixth Circuit employs a three-prong test, which was initially established in *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), to determine if a claim is procedurally defaulted under the adequate and independent state ground doctrine:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Hoffner v. Bradshaw,* 622 F.3d 487, 495 (6th Cir. 2010) (quoting *Jacobs v. Mohr,* 265 F.3d 407, 417 (6th Cir. 2001) (in turn quoting *Maupin*)); *see also Johnson v. Bradshaw,* 493 F. App'x 666, 669 (6th Cir. 2012). Under *Maupin* and as discussed above, if the three prerequisites are met for finding a claim is procedurally defaulted under the adequate and independent state ground doctrine, federal habeas corpus review of the defaulted claim is precluded unless the petitioner can demonstrate cause for and prejudice from his procedural default or that failure to consider the

defaulted claim will result in a "fundamental miscarriage of justice." *Hoffner*, 622 F.3d at 495 (citing *Maupin*, 785 F.2d at 138); *Johnson*, 493 F. App'x at 669. *See also Coleman*, 501 U.S. at 750; *Harris*, 489 U.S. at 262; *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In this case, although petitioner presented his claims for federal habeas relief as assignments of error on appeal to the Ohio Court of Appeals, he committed a procedural default when he failed to perfect a timely appeal to the Ohio Supreme Court from the Ohio Court of Appeals' October 22, 2012 decision overruling the assignments of error and affirming the trial court's judgment. Petitioner was permitted under Ohio S.Ct. Prac. R. 7.01(A)(4)(a) to seek a delayed appeal with the Ohio Supreme Court in order to challenge the Ohio Court of Appeals' decision. However, because the Ohio Supreme Court summarily denied his request for leave to file a delayed appeal filed nearly a year after the Ohio Court of Appeals issued its direct appeal decision (*see* Doc. 6, Exs. 23-26), petitioner's failure to pursue a timely appeal amounts to a default of his claims for federal habeas relief.

The Sixth Circuit has held that the Ohio Supreme Court's unexplained entry denying a motion for delayed appeal constitutes an adequate and independent state procedural ruling sufficient to bar review of a federal habeas corpus petition. *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004) (per curiam); *see also Baker v. Bradshaw*, 495 F. App'x 560, 565 (6th Cir. 2012) (citing *Bonilla* in pointing out that "[t]his court has held that violation of . . . the timeliness requirements for an appeal to the Ohio Supreme Court . . . constitute[s] adequate and independent state grounds to preclude hearing an untimely claim on the merits"), *cert. denied*, 133 S.Ct. 2391 (2013). In so holding, the Sixth Circuit reasoned in *Bonilla* that "the applicable Ohio [Supreme

12

Court] rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits." *Bonilla,* 370 F.3d at 497 (and unpublished Sixth Circuit cases cited therein). The court explained:

> The Ohio Supreme Court Rules require a motion for a delayed appeal to state "the date of entry of the judgment being appealed and adequate reasons for the delay." Ohio Sup.Ct. R. II, Section 2(A)(4)(a). In addition, the motion must be accompanied by a supporting affidavit and a "copy of the decision being appealed." *Id.* A motion for a delayed appeal is not required to contain the actual claims and supporting arguments sought to be presented on appeal. *Id.* Instead, only when "the Supreme Court grants a motion for delayed appeal," is the appellant required to "file a memorandum in support of jurisdiction." Ohio Sup.Ct. R. II, Section 2(A)(4)(c). Thus, the applicable Ohio court rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits.

*Id.* at 497.

As in *Bonilla,* petitioner failed to file a timely notice of appeal with the Ohio Supreme Court and his motion for leave to file a delayed appeal was denied by that court apparently because he did not provide adequate reasons for his delay in filing. *See id.* In this case, as in *Bonilla,* the Ohio Supreme Court was "entirely silent as to its reasons for denying [the] requested relief." *Id.* In such circumstances, it must be assumed that the state supreme court enforced the applicable procedural bar to review. *Id.* (citing *Simpson v. Sparkman,* 94 F.3d 199, 203 (6th Cir. 1996)).

Because petitioner failed to comply with a state procedural rule, which was relied on by the Ohio Supreme Court in denying his motion for delayed appeal, the Ohio Supreme Court was not provided with an opportunity to consider the merits of any of his claims for relief. Therefore, this Court's review of petitioner's claims is barred unless petitioner "can demonstrate cause for the default and actual prejudice . . . or demonstrate that failure to consider the claims will result in

13

a fundamental miscarriage of justice." *Id.* at 497 (quoting *Coleman,* 501 U.S. at 750).

Petitioner has neither argued nor otherwise demonstrated that failure to consider his claims will result in a "fundamental miscarriage of justice," or in other words, that the alleged errors "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995). No such showing has been made to the extent that petitioner has challenged the sufficiency of the evidence introduced at trial to establish his guilt, because actual innocence means factual innocence, not mere legal insufficiency. *See House v. Bell,* 547 U.S. 518, 538 (2006); *Carter v. Mitchell,* 443 F.3d 517, 538 (6th Cir. 2006) (citing *Bousley v. United States,* 523 U.S. 614, 623 (1998)); *Wright v. Lazaroff,* 643 F. Supp.2d 971, 989 (S.D. Ohio 2009) (Barrett, J.; Hogan, M.J.); *see also Vanwinkle v. United States,* 645 F.3d 365, 369 (6th Cir. 2011).

In addition, petitioner has not established cause for his procedural default in this case. In his motion for delayed appeal to the Ohio Supreme Court, petitioner contended that he was not informed of the Ohio Court of Appeals' decision until December 10, 2012, four days past the filing deadline of December 6, 2012. (*See* Doc. 6, Ex. 25). He also argued that because he is a layman who lacks knowledge of the law, he believed his appeal was denied when the deputy clerk of the Ohio Supreme Court returned his untimely appeal documents that were mailed to the court on December 10, 2012. (*Id.*). Finally, petitioner stated that he did not know until "recently" that he was required to file a motion for delayed appeal with the Ohio Supreme Court after the time for filing a timely appeal had passed. (*Id.*). The undersigned is not persuaded by any of those arguments.

Petitioner's argument that he was prevented from filing a timely appeal to the Ohio

14

Supreme Court because he did not learn of the Ohio Court of Appeals' decision until after the filing deadline had passed does not excuse the procedural bar to review. Petitioner has conceded that he was made aware of the Ohio Court of Appeals' decision on December 10, 2012, and yet he waited until October 15, 2013 to file a motion for delayed appeal with the Ohio Supreme Court. In an analogous case, where the petitioner argued that his appellate counsel's failure to inform him of a state court decision constituted cause for his failure to meet the deadline for perfecting a timely appeal to the Ohio Supreme Court, the Sixth Circuit held that "if the period of time between when the defendant learned of the [appellate court] decision and when he or she attempted to appeal the decision is *greater* than the period allotted by state law for the timely filing of an appeal . . ., the defendant fails to demonstrate that he or she "would have timely appealed" the decision but for [appellate] counsel's failure to notify the defendant of the decision." *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 435 (6th Cir. 2006) (emphasis in original); *see also Baker*, 495 F. App'x at 565-66 (relying on *Smith* in rejecting the habeas petitioner's argument that "cause" was established for his delay in filing a delayed appeal motion with the Ohio Supreme Court because, although the petitioner may not have known of the appellate court's decision until a year after the decision was rendered and at that point immediately filed a Rule 26(B) motion to reopen the appeal, he did not file his motion for delayed appeal until 90 days later, well past the 45-day appeal period allotted under the Ohio Supreme Court's Rules of Practice). Similarly, here, after learning in December 2012 of the Ohio Court of Appeals' decision and that his untimely appeal documents were not accepted for filing by the Ohio Supreme Court, petitioner waited ten months before filing his motion for delayed appeal on October 15, 2013. Therefore, as in *Smith* and *Baker*, petitioner's reliance on the fact that he was

not informed in a timely fashion of the Ohio Court of Appeals' decision does not excuse the procedural bar to review of his claims. *Cf. Smith,* 463 F.3d at 436; *Baker,* 495 F. App'x at 565-66; *see also Gau v. Kelly,* No. 4:09cv2955, 2011 WL 400141, at *6-7 (N.D. Ohio Feb. 4, 2011).

Petitioner has contended that his failure to file a timelier motion for delayed appeal should be excused because he is a *pro se* litigant who lacks knowledge of the law or the procedural requirements for seeking an appeal with the Ohio Supreme Court after the deadline for filing a timely appeal has passed. However, it is well-settled in the Sixth Circuit that such reasons are insufficient to establish cause to excuse a procedural default. *See, e.g., Bonilla,* 370 F.3d at 498; *see also Hannah v. Conley,* 49 F.3d 1193, 1197 (6th Cir. 1995) (holding that the petitioner's "pro se status and ignorance of his rights do not constitute cause excusing his failure to raise grounds before the state courts"); *Rogers v. Warden, Warren Corr. Inst.,* No. 1:10cv397, 2011 WL 1771691, at *6 (S.D. Ohio Feb. 8, 2011) (Litkovitz, M.J.) (Report & Recommendation) ("[t]he petitioner's pro se status, ignorance of the law or procedural requirements, or limited access to legal materials does not constitute cause" to excuse his procedural default of his habeas claims), *adopted,* 2011 WL 1753711 (S.D. Ohio May 9, 2011) (Dlott, J.).

Accordingly, in sum, the undersigned concludes that petitioner procedurally defaulted his claims for federal habeas relief, which were raised to and considered by the Ohio Court of Appeals on direct appeal, by failing to pursue a timely appeal to the Ohio Supreme Court. The Ohio Supreme Court's subsequent denial of his motion for delayed appeal constitutes an adequate and independent state procedural ruling sufficient to bar review of petitioner's federal habeas corpus petition absent a showing of cause for petitioner's procedural default or that a fundamental miscarriage of justice will occur if petitioner's claims for relief are not considered by this Court.

## IT IS THEREFORE RECOMMENDED THAT:

1. Respondent's motion to dismiss (Doc. 6) be **GRANTED** to the extent that petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) should be **DISMISSED** with prejudice on the ground that petitioner procedurally defaulted and has waived his grounds for relief.

2. A certificate of appealability should not issue with respect to any of the claims for relief alleged in the petition, which this Court has concluded is barred from review on a procedural ground, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether the Court is correct in its procedural ruling.[3]

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

*Karen L. Litkovitz*
Karen L. Litkovitz
United States Magistrate Judge

---

[3] Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in his procedurally defaulted grounds for relief. *See Slack,* 529 U.S. at 484.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARCUS ISREAL,
    Petitioner,

vs

WARDEN, WARREN
CORRECTIONAL INSTITUTION,
    Respondent.

Case No. 1:14-cv-24

Barrett, J.
Litkovitz, M.J.

NOTICE

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc